1

2

3

4

5                   IN THE UNITED STATES DISTRICT COURT

6            FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8   J&J SPORTS PRODUCTIONS, INC.,        No. C 09-1037 SI

9            Plaintiff,          **ORDER GRANTING PLAINTIFF'S**
                                                                         **MOTION FOR DEFAULT JUDGMENT**

10    v.

11   ROMARICO S. MIRANDA, d/b/a WEDGE
    BAR & RESTAURANT,

12

13            Defendant.
   _____/

14

15       On September 11, 2009, the Court held a hearing on plaintiff's motion for default judgment. The

16   Court has reviewed plaintiff's supplemental filings regarding attorneys' fees and costs, and GRANTS

17   plaintiff's motion for default judgment as set forth below.

18

19                           **BACKGROUND**

20       Plaintiff, the exclusive licensor of rights to exhibit certain closed circuit and pay-per-view sports

21   programming, brought suit against defendant for showing a boxing match in his restaurant without a

22   license.  Plaintiff's complaint alleged that defendant is liable under the Communication Act, 47 U.S.C.

23   §§ 553 and 605 for receiving, intercepting and assisting in the receipt or interception of licensed

24   programming.  Plaintiff's hired private investigator was present on the evening of the fight, March 15,

25   2008, in defendant's restaurant and saw the Levano v. Jandeang  fight being broadcast.  *See* Affidavit

26   of Gary Gravelyn.  Plaintiff filed a complaint against defendant, who never responded.  The Clerk

27   entered default against defendant on June 19, 2009.

28

**United States District Court**
For the Northern District of California

**DISCUSSION**

The Federal Communications Act of 1934, 47 U.S.C. § 605 *et seq*. prohibits commercial establishments from intercepting and broadcasting satellite cable programming without a license. It provides a private right of action in federal court. Plaintiffs may request that courts award actual or statutory damages between $1000 and $10,000 for each violation of section 605. 47 U.S.C. § 605 (e)(3)(C)(I). Damages of up to $100,000 may be awarded for willful violations. 47 U.S.C. § 605 (e)(3)(C)(ii).

The Cable & Television Consumer Protection Act of 1992, 47 U.S.C. § 553, which amended the Federal Communications Act, prohibits unauthorized interception or reception of communications over a cable system. It provides a private right of action in federal court. Plaintiffs may request that courts award actual or statutory damages of $250 to $10,000. 47 U.S.C. § 553(c)(3)(A). Damages of up to $50,000 may be awarded for willful violations that are intended to confer "indirect commercial advantage or private financial gain." 47 U.S.C. § 553(c)(3)(B).

Plaintiff's application for default judgment contends that defendant's violations of 47 U.S.C. § 605 *et seq*. and 47 U.S.C. § 553 were willful and that this Court should enter default judgment in the amount of the statutory maximum, $100,000. The Act provides for an enhanced damage award of up to $100,000 when "a violation was committed willfully and for purposes of direct or indirect commercial advantage or financial gain." 47 U.S.C. 605(e)(3)(C)(ii).

This Court declines to grant plaintiff's request for the statutory maximum. The allegations in a complaint regarding the monetary amount of damages that should be granted in a default judgment are not controlling, and "the mere assertion that defendants acted willfully is insufficient to justify enhanced damages." *Kingvision Pay-Per-View Ltd. v. Backman*, 102 F. Supp. 1196, 1198 (N.D. Cal. 2000). Courts that have awarded enhanced damage awards due to willful violations of the Communications Act have cited such factors as the repeated violation of the Act, the intent to profit from the violations and actual profit derived from the violation. *Id.*, at 1197-98. Here there is no evidence that the violation occurred multiple times, that the establishment intended to directly profit from the violation or that it actually profited from the violation. "Courts in this district have considered several cases involving pirating of closed-circuit sports broadcasts and, absent a showing of egregious

2

wrongdoing, generally have awarded damages slightly over the statutory minimum." *Universal Sports Network v. Jimenez*, 2002 WL 31109707, at *1 (N.D. Cal. Sept. 18, 2002).  Therefore the Court finds that an enhanced damage award is not warranted under the statute.

Under 47 U.S.C. § 605(e)(3) the Court may award statutory damages between $1,000 and $10,000 for a violation of the Act.  This Court awards $1,000 in damages to plaintiff.  In cases in which plaintiffs have proven violations under both § 605 and § 553 courts in this district have declined to award cumulative damages, and have awarded the higher statutory award permitted under § 605.  Therefore this Court declines to award damages pursuant to § 553.  *See Kingvision Pay-Per-View, Ltd. v. Chavez*, 2000 WL 1847644, at *2 (N.D. Cal. Dec. 11, 2000).

Plaintiff also requests default judgment on its state law claim of conversion.  Under California law, conversion has three elements: (1) ownership or right to possession of property; (2) wrongful disposition of the property right of another; and (3) damages.  *See G.S. Rasmussen & Assoc. v. Kalitta Flying Serv.*, 958 F.2d 896, 906 (9th Cir. 1992).  Accepting the allegations in the complaint as admitted, plaintiff has established conversion in this case.

Plaintiff requests $1,500 in actual damages for the conversion.  Damages for conversion must be based on the value of the property at the time of the conversion.  *See Krueger v. Bank of America*, 145 Cal. App. 3d 204, 215 (1983).  According to plaintiff's president, "[d]omestic commercial establishments, which contract with us, were required to pay to my company a commercial sublicense fee to broadcast the Program.  The sublicense fee for the Program was based on the capacity of the establishment and varies for each event. . . . [F]or this particular event, if a commercial establishment had a maximum fire occupancy code of 100 persons, the commercial sublicense fee would have been $1,500.00."  Gagliardi Decl. ¶ 8, Ex. 1.  The defendant's establishment has an approximate capacity of 100 people.  Gravelyn Decl.  Plaintiff has shown that had defendant paid for the right to broadcast the fight, the commercial sublicense fee would have been $1,500, and accordingly the Court awards $1,500 in damages for the conversion claim.  *See Kingvision Pay-Per-View, Ltd. v. Chavez*, 2000 WL 1847644, at *4 (N.D. Cal. Dec. 11, 2000) (awarding $4000 in default damages for conversion claim involving two pirated programs).

Plaintiff has also requested attorney's fees pursuant to 47 U.S.C. § 605(e)(3)(B)(ii) which

3

United States District Court
For the Northern District of California

1    authorizes the Court to award fees and costs to the prevailing party in an action such as this.  Plaintiff

2    requests that this Court award $2,546.40 in attorney's fees, and $1,025 in costs.  Plaintiff's counsel filed

3    a declaration on September 17, 2009 in support of the requested attorneys' fees and costs.  Mr. Riley

4    stated that he sought attorneys' fees at a "blended" rate of $400 per hour, and explained that "[t]his

5    blended rate includes myself at ($300.00) per hour and accompanying paralegal and/or administrative

6    assistant time at ($100.00) per hour."  Sept. 17, 2009 Riley Decl. ¶ 1.  Almost all of the requested time

7    was sought at $400 per hour, with the exception of .1 hour at $300 per hour for a telephonic appearance

8    made solely by counsel.

9            After review of Mr. Riley's declaration, the Court issued an order on October 20, 2009, stating

10   that "the Court is not aware of any authority supporting such a methodology for calculating a 'blended'

11   rate, which would simply increase the cost of all time spent by any legal worker."  October 20, 2009

12   Order at 1:18-19.  The Court directed plaintiff's counsel to file a supplemental declaration separately

13   documenting the time spent by counsel, at $300 per hour, and time spent by a paralegal, at $100 per

14   hour.  In response, Mr. Riley filed a supplemental declaration stating that aside from the .1 hour billed

15   for the telephonic court appearance "all other items referenced concerning legal services rendered

16   involve the *joint* legal work of both myself and a paralegal and/or one or more administrative

17   assistants."  October 26, 2009 Riley Decl. ¶ 4 (emphasis in original).  Mr. Riley also states that "[i]n my

18   law firm, near all pleading work is done in conjunction with one or more assistant[s] or paralegal[s],"

19   and that "[t]he administrative assistants and paralegal[s] do *not* prepare documents without my personal

20   involvement, oversight, review, and revision to the work product.  Pleadings and other documents are

21   cycled through the administrative assistants and the paralegal to my office until they are finalized."  *Id*.

22   ¶ 5 (emphasis in original).

23           There are two problems with counsel's application and supplemental declaration.  The first

24   concerns his math:  if he is "blending" a more expensive service (his own at $300/hour) with a less

25   expensive service (his paralegal's at $100/hour), the "blended" rate would be between $300 and $100

26   – closer to the end of that range at which most of the time was spent.  Under no circumstances would

27   a "blended" rate be higher than his own top-end rate.

28           The second is that the tasks performed in connection with this lawsuit, and no doubt the dozens

4

United States District Court
For the Northern District of California

1   of others that counsel handles for this and similar clients, are entirely pedestrian and predictable.  This

2   Court seriously doubts that a single original document or pleading was created for this action, save the

3   "public records research and review of Romarico Salvador Miranda," which happened on 2/25/09 and

4   took 0.125 hours (seven and a half minutes).  An attorney's signature was certainly required to file the

5   complaint, and an attorney was required to make the "telephonic appearance at hearing on motion for

6   default judgment" on 9/11/09 (listed at 0.100 hours, or six minutes), but beyond that the involvement

7   of an attorney, as opposed to a paralegal or a secretary,  was probably superfluous.

8       Since counsel asserts that he is unable to separate his own time from that of this non-lawyer

9   assistants, and since his computation of the "blended" rate was palpably wrong, the Court is required

10  to do the math in determining the appropriate "blended" rate.  Under these circumstances, the Court

11  determines that the ratio of attorney hours vs. non-attorney hours, for the actions taken and pleadings

12  filed in this case, would be generous to counsel at 1-to-10.  Thus an appropriate blended rate would be

13  about $130/hour for all of the "joint" time.  The Court awards $847.83 in fees (6.291 hours x $130 per

14  hour + .1 hour x $300 per hour), and $1,025 in costs.

15

16                                         **CONCLUSION**

17      For the foregoing reasons, the Court GRANTS plaintiff's motion for default judgment. (Docket

18  Nos. 14 & 19).  The Court awards $2,500 in damages, $847.83 in attorneys' fees, and $1,025 in costs.

19

20      **IT IS SO ORDERED.**

21

22  Dated: November 16, 2009                          _____

23                                                    SUSAN ILLSTON
                                                      United States District Judge

24

25

26

27

28